IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MARY PADILLA**,

    Plaintiff,

    vs.      No.  **CIV 03-1444 MCA/WDS**

**UNUM PROVIDENT**, a/k/a
**UNUM LIFE INSURANCE COMPANY
OF AMERICA**, **PRESBYTERIAN HEALTH
CARE SERVICES, JOHN & JANE DOES 1-3**,

    Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant *UNUM's Motion to Dismiss in Part, Pursuant to Fed. R. Civ. P. 12(b)(6) and 56* [Doc. No. 39] filed on December 31, 2004. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court concludes that Defendant UNUM is entitled to summary judgment on Plaintiff's Fair Credit Reporting Act (FCRA) and invasion of privacy claims for the reasons set forth below.

**I.  BACKGROUND**

The history of this litigation prior to the filing of Plaintiff's *First Amended Complaint* [Doc. No. 33] is set forth in the Court's *Order* [Doc. No. 31] filed on November 17, 2004. In that order, I permitted Plaintiff to add an FCRA claim to her pleading, and I noted the legal grounds on which such an FCRA claim may be asserted in this context.

On December 31, 2004, Defendant UNUM filed a motion to dismiss or for summary judgment on Plaintiff's FCRA claim, as well as any common-law invasion of privacy claim asserted or implied in her *First Amended Complaint.* [Doc. No. 39.]  For purposes of Defendant UNUM's motion, the parties do not dispute that Defendant UNUM used or obtained Plaintiff's credit report on or about December 11, 2003, and that Plaintiff's credit report qualifies as a "consumer report" under the FCRA.  The parties also do not dispute that on or about May 5, 2000, Plaintiff signed a written authorization allowing Defendant UNUM to obtain her credit report if needed to evaluate her claim for disability-insurance benefits during the pendency of that claim.  [Ex. A to Doc. No. 39; Ex. 2 to Doc. No. 43.]

The issue in dispute is whether the conditions specified in Plaintiff's written authorization were satisfied at the time Defendant UNUM obtained her credit report on or about December 11, 2003.  At that time, there was an ongoing disagreement between the parties as to whether Plaintiff had previously received an overpayment of disability-insurance benefits from Defendant UNUM, and whether Plaintiff was entitled to long-term disability benefits (*i.e.*, benefits extending beyond a period of 24 months).  These two claims are interrelated because if Plaintiff were to prevail on her claim for long-term disability benefits and Defendant UNUM were to prevail with respect to the alleged overpayment, then the amount of that overpayment could be subtracted from Plaintiff's future disability-insurance benefits.

The dispute over the alleged overpayment arose from certain provisions in the disability insurance policy that Plaintiff purchased from Defendant UNUM.  Under these

2

provisions, the benefits payable for Plaintiff's disability under the policy are calculated by, among other things, deducting the amount of disability benefits for which Plaintiff is eligible under the Social Security Act as a result of the same disability. [Ex. C to Doc. No. 53.] These provisions of the policy also are reflected in a "Disability Payment Options" form that Plaintiff signed when Defendant UNUM first awarded disability-insurance benefits to her in June 2000. Because the Social Security Administration had not yet made a decision concerning her eligibility for Social Security benefits at the time she began receiving benefits under her insurance policy with Defendant UNUM, this form gave Plaintiff the option to receive monthly payments from Defendant UNUM with no reduction for estimated Social Security benefits until the Social Security Administration made a decision on her eligibility, provided that she agreed to "supply UNUM with a copy of the Social Security decision and repay any overpayment in full within 30 days from receipt of the Social Security award check." [Ex. 5 to Doc. No. 58.] Plaintiff chose this option by checking a box on the "Disability Payment Options" form and signing it.

According to Defendant UNUM, Plaintiff's choice of this payment option resulted in her receipt of an overpayment of insurance benefits from Defendant UNUM which she was obligated to repay within 30 days from receipt of her Social Security award check. The Social Security Administration issued a "Notice of Decision" awarding Social Security benefits to Plaintiff on October 23, 2002, and Plaintiff forwarded this notice to Defendant UNUM on November 8, 2002. [Ex. 8 to Doc. No. 58.]

By that time, however, Plaintiff had retained counsel, and she refused to repay the

alleged overpayment resulting from her eligibility for Social Security benefits on the grounds that these benefits did not result from the same disability. In addition, Defendant UNUM had stopped paying insurance benefits to her at that time based on its denial of her long-term disability claim (*i.e.*, her claim for insurance benefits extending beyond a period of 24 months). [Ex. 1 to Doc. No. 58.] Before initiating this litigation, Plaintiff pursued Defendant UNUM's administrative appeals process for challenging the denial of her long-term disability claim, and she also challenged the alleged overpayment resulting from her eligibility for Social Security benefits. [Ex. 6, 7, 9, 13, 14A, 14B, 14C, 14D, 14E, 15A, 15B, 15C, 15D, 15E, 19 to Doc. No. 58.]

Plaintiff contends that Defendant UNUM's purpose for obtaining her credit report on or about December 11, 2003, was simply to further its efforts to recover the alleged overpayment of disability-insurance benefits, and that this purpose does not fall within the scope of her written authorization because it does not concern "evaluating her claim for benefits." Plaintiff also contends that her claim for benefits was no longer pending after Defendant UNUM made its final administrative decision denying any further payment of benefits on August 20, 2003, and thus her written authorization had expired by that date, if not sooner. [Ex. 7 to Doc. No. 58.]

Defendant UNUM disputes these contentions and asserts that the conditions specified in Plaintiff's written authorization were satisfied with respect to the credit report obtained on or about December 11, 2003. In particular, Defendant UNUM asserts that the evaluation of Plaintiff's claim for disability-insurance benefits necessarily included the dispute over

whether there was an overpayment of these benefits due to her eligibility for Social Security benefits for the same disability. Defendant UNUM further asserts that the dispute over this alleged overpayment was still pending as of December 11, 2003, because Plaintiff had not returned the alleged overpayment as of that date, and she continued to assert a claim to these overpaid benefits (as well as additional long-term disability benefits). [Doc. No. 53.]

## II.   ANALYSIS

Dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991). Accordingly, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. GFF Corp., 130 F.3d at 1384.

"In addition to the complaint, the . . . [C]ourt may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002). Thus, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the

plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." GFF Corp., 130 F.3d at 1384. The Court "'may also take judicial notice of matters of public record' without converting a 12(b)(6) motion into a motion for summary judgment." Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994).

To the extent that Defendant's motion refers to other material outside of the pleadings, the motion is reviewed as one for summary judgment pursuant to Fed. R. Civ. P. 56. See Fed. R. Civ. P. 12(b). Summary judgment under Fed. R. Civ. P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed. R. Civ. P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not

necessarily need to be presented in a form admissible at trial).  See Celotex, 477 U.S. at 324.  It is not the Court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

In this instance, Defendant UNUM attached additional evidence to its reply brief in support of its motion and, under these circumstances, I permitted Plaintiff to file a surreply to Defendant UNUM's motion in order to address this additional evidence.  See Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1163-65 (10th Cir. 1998).  My consideration of the additional evidence attached to Defendant UNUM's reply brief and Plaintiff's surreply necessarily converts Defendant UNUM's motion into one for summary judgment under Fed. R. Civ. P. 56.  See Fed. R. Civ. P. 12(b).

The claim on which Defendant UNUM seeks summary judgment arises under the FCRA.  Plaintiff has acknowledged that the FCRA governs this claim, and there is no independent common-law tort claim for invasion of privacy.  [Doc. No. 43, at 4-5.]  Thus, Defendant UNUM is entitled to summary judgment with respect to any common-law invasion of privacy claim that may be implied in Plaintiff's pleadings.

As previously noted in the *Order Granting Second Motion to Amend Complaint* [Doc. No. 31], the FCRA was amended in 1996 to provide consumers with a civil cause of

action against persons who obtain consumers' credit reports under false pretenses or for an impermissible purpose.  See 15 U.S.C. § 1681b(f); Phillips v. Grendahl, 312 F.3d 357, 363-65 (8th Cir. 2002) (explaining the legislative history of this provision).  Moreover, the Tenth Circuit recognized such a cause of action under a different provision of the FCRA even before the statute was amended in 1996.  See Zamora v. Valley Fed. Savings & Loan Ass'n, 811 F.2d 1368, 1370-71 (10th Cir. 1987) (per curiam).  In order to prevail on a claim under this provision of the FCRA, Plaintiff must prove that (1) there was a consumer report, (2) that defendants used or obtained it, (3) that they did so without a permissible statutory purpose, and (4) that they did so with the requisite level of culpability (either willfully or negligently).  Phillips, 312 F.3d at 364.

The permissible statutory purposes for obtaining or using consumer reports are listed in 15 U.S.C. § 1681b(a).  These purposes include furnishing a consumer report:

> (2) In accordance with the written instructions of the consumer to whom it relates [or]
> (3) To a person which [a consumer reporting agency] has reason to believe--
> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;  or
> (B) intends to use the information for employment purposes;  or
> (C) intends to use the information in connection with the underwriting of insurance involving the consumer;  or
> (D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status;  or
> (E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation;  or

> (F) otherwise has a legitimate business need for the information--
> (i) in connection with a business transaction that is initiated by the consumer; or
> (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

15 U.S.C. § 1681b(a)(2), (3).

In its official comment to these statutory provisions, the Federal Trade Commission (FTC) has explained the meaning of the phrase, "in accordance with the written instructions of the consumer," as follows: "If the [credit] report subject furnishes written authorization for a report, that creates a permissible purpose for furnishing the report."  16 C.F.R. pt. 600 App., at 502 (2004).  Courts opinions accord with the FTC's interpretation of the statute. See, e.g., Washington v. CSC Credit Servs., Inc., 199 F.3d 263, 266 (5th Cir. 2000) ("[A] reporting agency may provide consumer reports to an insurance company . . . when the consumer consents in writing . . . ."); Hammons v. Enterprise Leasing Co., 993 F. Supp. 1388, 1390 (W.D. Okla. 1998) (citing FTC's official comment); LeBlanc v. Allstate Ins. Co., No. Civ. A.99-2724, 2000 WL 687900, at *3 (E.D. La. May 17, 2000) (quoting same); Malbrough v. State Farm Fire & Cas. Co., No. 96-1540, 1997 WL 159511, at *3-4 (E.D. La. Mar. 31, 1997) (quoting same).

In this case, it is undisputed that Plaintiff signed a form on or about May 5, 2000, that is entitled "Long Term Disability Claim:  Employee's Authorization."  The text of this written authorization form states, in relevant part, that:

> This authorizes you to give [Defendant] UNUM . . . any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, credit, financial, earnings and employment

>   history) needed to evaluate my claim for benefits. . . .   This authorization is
>   valid during the pendency of my claim.

[Ex. A to Doc. No. 39; Ex. 2 to Doc. No. 43.]

Under the authorities cited above, it is beyond dispute that Plaintiff's written authorization creates a "permissible purpose" for obtaining her credit report under the FCRA. The only question is whether Defendant UNUM's use of Plaintiff's credit report on or about December 11, 2003, falls within the parameters of that written authorization.

Plaintiff's written authorization is in the nature of a contract or agreement between the parties, and interpreting the language in a contract generally presents a question of law for the Court to answer. See Caven v. Am. Fed. Savings and Loan Ass'n, 837 F.2d 427, 430 (10th Cir. 1988) (collecting cases). "Where there is only a question of law, such a case is well-suited for the use of a summary judgment procedure." Peck v. Title USA Ins. Corp., 108 N.M. 30, 33, 766 P.2d 290, 293 (1988).

Because the written authorization at issue here concerns the conditions under which Defendant UNUM may use or obtain consumer reports regulated by the FTCA, the FTCA's statutory scheme provides guidance in understanding the meaning and effect of that authorization. The section of the FTCA quoted above contains a number of specific provisions permitting disclosure of credit reports to insurers under certain circumstances. See, e.g., 15 U.S.C. § 1681b(a)(3)(C) (permitting disclosure to insurers who intend "to use the information in connection with the underwriting of insurance involving the consumer"); id. § 1681b(a)(3)(E) (permitting disclosure to insurers "in connection with a valuation of, or

an assessment of the credit or prepayment risks associated with, an existing credit obligation"). There are also more general provisions not referencing insurance which may nevertheless apply to insurers in some instances. See, e.g. id. § 1681b(a)(3)(F) (providing for disclosure to a person who "otherwise has a legitimate business need for the information"). Thus, the FTCA allows insurers "to obtain credit reports without the consumer's permission or over their objections, as long as the report is being obtained for a permissible purpose." Uhlig v. Berge Ford, Inc., 257 F. Supp. 2d 1228, 1232 (D. Az. 2003) (citing 16 C.F.R. pt. 600 App.).

The FCRA, however, does not list "evaluating a claim for insurance benefits" as a "permissible purpose" for obtaining or using a consumer report. Indeed, the FTC's official comment on the FTCA provides that insurers may not rely on the specific provision regarding "underwriting of insurance," 15 U.S.C. § 1681b(a)(3)(C), to "obtain a consumer report for the purpose of *evaluating a claim* (to ascertain its validity or otherwise determine what action should be taken)." 16 C.F.R. pt. 600 App., at 504 (emphasis added). The FTC's official comment on this subject accords with judicial interpretations of the FTCA as applied in the context of insurance claims. See, e.g., LeBlanc, No. Civ. A.99-2724, 2005 WL 687900, at *2 (citing St. Paul Guardian Ins. Co. v. Johnson, 884 F.2d 881, 883 (5th Cir. 1989)).

These authorities serve to explain why it is necessary for insurers to obtain written authorizations from their insured when they intend to use or obtain a consumer report for purposes of *evaluating a claim*. Insurers must rely on written authorizations for this purpose

11

because the FCRA lists no other permissible purpose for obtaining or using a consumer report to evaluate an insurance claim.

The written authorization form at issue here uses the same terminology employed in the FTC's official comment, *i.e.*, "evaluating a claim," and I conclude that this terminology also shares the same meaning, *i.e.*, "to ascertain [a claim's] validity or otherwise determine what action should be taken." 16 C.F.R. pt. 600 App., at 504. This regulatory definition simply places the terminology in the appropriate context and does not differ materially from the plain meaning of the term "evaluate," as reflected in common dictionary definitions. See, e.g., Webster's Third New International Dictionary 786 (1981) (defining "evaluate" as "to estimate or ascertain the monetary worth of" or "to examine and judge concerning the worth, quality, significance, amount, degree, or condition of").

It is logical that Defendant UNUM's written authorization form would limit its purpose to evaluating a pending claim for insurance benefits, because the FTC's comment on the FCRA designates this particular purpose as impermissible absent such written authorization. To the extent that Defendant UNUM sought Plaintiff's credit report for a different purpose that is permissible under the FCRA (such as underwriting insurance, valuing an existing credit obligation, or other legitimate business needs), such written

authorization would not be necessary.[1]

I also conclude that Defendant UNUM's need to obtain or use Plaintiff's credit report on or about December 11, 2003, falls within the definition of "evaluating a claim" because this need relates to ascertaining the validity of her claim for benefits or otherwise determining what action should be taken. See 16 C.F.R. pt. 600 App., at 504. In particular, Defendant UNUM's use of Plaintiff's credit report on that date fell within the claims-evaluation process because it was needed to determine what action should be taken in response to Plaintiff's claim that she is entitled to keep the alleged overpayment of insurance benefits resulting from her eligibility for Social Security benefits, as well as her claim that she is entitled to long-term benefits under the insurance policy, which Defendant UNUM has not yet paid and from which the alleged overpayment could foreseeably be deducted if Plaintiff were to prevail on the latter claim. Plaintiff has failed to come forward with admissible evidence that, when viewed in her favor, would support a reasonable inference that Defendant UNUM lacked such a need or obtained her credit report for some reason that is not responsive to her disability-insurance claims under the policy.

Plaintiff's next contention is that even if Defendant UNUM obtained or used her

---

[1] In the event that Defendant UNUM did not prevail on its argument that Plaintiff's credit report was obtained for the purpose of evaluating her claim pursuant to her written authorization, Defendant UNUM would not be precluded from arguing, in the alternative, that the credit report was obtained for some other "permissible purpose" under the FCRA. Indeed, the evidence of record suggests that if Defendant UNUM was not evaluating Plaintiff's claim for benefits on or about December 11, 2003, the company's use of her credit report would instead fall under a "legitimate business need" defined in 15 U.S.C. § 1681b(a)(3)(F).

credit report for the purpose of evaluating her claims for benefits, the written authorization that she signed on or about May 5, 2000, was no longer valid for this purpose on or about December 11, 2003, because her claim for benefits was no longer pending on the latter date. To support this contention, Plaintiff points out that she had retained counsel and exhausted Defendant UNUM's administrative appeals process long before December 11, 2003, and the parties were anticipating litigation at that time.

I recognize that the permissible purposes for obtaining or using a person's consumer report under the FCRA do not continue to exist indefinitely. Thus, the pendency of Plaintiff's claim for benefits cannot be determined solely by reference to whether Defendant UNUM now presents a reason for thinking that this claim should continue in existence. Rather, Defendant UNUM's belief that Plaintiff's claim for benefits remains pending must be a reasonable one that is supported by the record. See Smith v. Bob Smith Chevrolet, Inc., 275 F. Supp. 2d 808, 820 (W.D. Ky. 2003). The requirement of reasonableness also is relevant to another essential element of Plaintiff's FCRA claim, *i.e.*, that Defendant acted with the requisite level of culpability (either willfully or negligently). See Phillips, 312 F.3d at 364.

In this case, there are several undisputed facts which support a reasonable belief that Plaintiff's claim for disability benefits remained pending notwithstanding the completion of Defendant UNUM's administrative-appeals process. First, Defendant UNUM's pursuit of the alleged overpayment resulting from Plaintiff's eligibility for Social Security benefits was not based on a unilateral, after-the-fact belief that a debt should exist, as in the case of Bob

14

Smith Chevrolet, Inc., 275 F. Supp. 2d at 819-20. Rather, the dispute over the alleged overpayment arose from the terms of the insurance policy itself, as well as the agreement Plaintiff made in the "Disability Payment Options" form, which alerted her to the need for reimbursing Defendant UNUM in the future in the event of an overpayment resulting from her eligibility for Social Security benefits. [Ex. 5 to Doc. No. 58.] For these reasons, the issue which prompted Defendant UNUM to obtain or use Plaintiff's credit report is directly linked to a business transaction that Plaintiff initiated when she chose to purchase a disability-insurance policy from Defendant UNUM and selected a payment option when her initial claim for benefits was approved during the first 24 months of her disability.

Second, the undisputed facts show that the issue of the alleged overpayment, as well as Plaintiff's claim for long-term benefits (from which the alleged overpayment might be subtracted), was not conclusively resolved as of December 11, 2003. As of that date, Plaintiff had not reimbursed Defendant for the alleged overpayment, nor had she withdrawn her claim for long-term disability benefits. On the contrary, her counsel's communications with Defendant UNUM indicated that she still wished to pursue these claims during the relevant time period, and she continues to pursue them in this litigation.

According the FTC's official comment, the possibility of future litigation does not, in and of itself, provide a "permissible purpose" for obtaining or using a potential litigant's consumer report under the FCRA. 16 C.F.R. pt. 600 App. at 505 (citing 15 U.S.C. § 1681b(a)(3)(F)). "Therefore, potential plaintiffs may not always obtain reports on potential defendants to determine whether they are worth suing." Id. On the other hand, the FTC's

official comment also states that the transaction giving rise to the litigation may provide a "permissible purpose" if it is "a business transaction involving the consumer," as in the case of a party "seeking to sue on a *credit* account." Id.  As examples of a "legitimate business need" giving rise to such a "permissible purpose," the FTC's official comment mentions "a consumer who applies to rent an apartment, offers to pay for goods with a check, applies for a checking account or similar service, seeks to be included in a computer dating service, or who has sought and received over-payments of government benefits that he has refused to return." Id.

The basis for Defendant UNUM's summary-judgment motion in this case involves "written authorization" pursuant to 15 U.S.C. § 1681b(a)(2) rather than the assertion of a "legitimate business need" pursuant to 15 U.S.C. § 1681b(a)(3)(F).  Nevertheless, I find the FTC's official comment on the latter provision of the FCRA to be instructive in determining what constitutes a pending claim under the terms of Plaintiff's written authorization.  If a "legitimate business need" may provide a "permissible purpose" for obtaining a consumer report under the FCRA even after the underlying business transaction gives rise to litigation, then it is logical to conclude that a written authorization may also provide such a "permissible purpose" even after the parties complete the administrative-appeals process and begin to anticipate litigation in order to resolve an underlying claim for benefits, so long as the belief in the pendency of the claim is a reasonable one.

In this case, Plaintiff has presented no admissible evidence which would support a reasonable inference that she revoked or withdrew her written authorization before December

16

11, 2003. While Plaintiff has presented a copy of a letter dated June 26, 2002, advising Defendant UNUM that she had retained counsel as of that date, this letter does not contain any language which can reasonably be construed as revoking or withdrawing her written authorization. [Ex. 1 to Doc. No. 58.] As noted above, the mere fact that a party to a claim or transaction has retained counsel in anticipation of litigation does not necessarily destroy the "permissible purposes" for obtaining that party's consumer report under the FCRA. It may be entirely reasonable to believe that such a "permissible purpose" exists notwithstanding the retention of counsel or the anticipation of litigation when that litigation arises from a business transaction initiated by the consumer, and the consumer has provided a written authorization in the course of that transaction.

Plaintiff also has presented a copy of a written authorization form for her Social Security records that is dated February 2, 2003. [Ex. 12 to Doc. No. 58.] This authorization form does not contain any language that purports to revoke or limit the earlier authorization that she signed on or about May 5, 2000, and the mere fact that Plaintiff signed an authorization form specifically tailored to the needs of the Social Security Administration does not support a reasonable inference that her earlier authorization was then invalid as it pertains to her credit report, which was not obtained from the Social Security Administration. On the contrary, the Social Security authorization form only lends further support to the conclusion that Plaintiff's claim for benefits was still pending in 2003 and that she authorized the disclosure of information needed to further evaluate her claim during that time period.

For all of the above reasons, I conclude that Defendant UNUM is entitled to summary judgment on Plaintiff's FCRA claim. Plaintiff has failed to come forward with admissible evidence that, when viewed in the light most favorable to her, would support a reasonable inference that Defendant UNUM negligently or willfully used or obtained her consumer report without a permissible statutory purpose.

In reaching this conclusion, I do not state or imply any opinion concerning the merits of Plaintiff's underlying claim for long-term disability benefits or for retention of the alleged overpayment of insurance benefits she previously received. Under the terms of Plaintiff's written authorization, my analysis of her FCRA claim turns on whether Defendant UNUM's evaluation of her claim for benefits was pending on or about December 11, 2003, not on whether the result of that evaluation ultimately was correct.

### III.   CONCLUSION

For the foregoing reasons, Defendant UNUM is entitled to summary judgment on Plaintiff's FCRA claim and on any common-law invasion of privacy claim that may be implied in her pleadings.

**IT IS, THEREFORE, ORDERED** that Defendant *UNUM's Motion to Dismiss in Part, Pursuant to Fed. R. Civ. P. 12(b)(6) and 56* [Doc. No. 39] is **GRANTED**.

**SO ORDERED** this 20th day of May, 2005, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge